(Decided December 1st, 1897).

GEORGE R. GOLDSBOROUGH *vs.* SARAH E. MARTIN AND OTHERS.

*Construction of an Agreement Between Heirs Relating to the Use and Ownership of Land.*

The heirs of a deceased owner of land, six in number, being seised of the land as tenants in common, entered into an agreement by which it was provided that the family homestead with certain land appurtenant thereto should be kept up and maintained as a common home for all the parties and that no one should call for a division so long as any of the parties should desire to occupy it. Some years afterwards a second agreement was made by all the parties except Mrs. M., stating "it is our desire that each individual share of the old homestead, after the death of any of the brothers and sisters, shall become the property of the surviving brothers and sisters and so on until the last heir, who as owner of the whole, shall dispose of the old homestead as he or she may desire." Plaintiff filed a bill for the sale of the property, alleging that he and Mrs. M. were the only surviving parties to the first agreement, and that under the second agreement, he, as the only survivor of the parties thereto, was entitled to five-sixths of the proceeds of sale. The defendants, who were Mrs. M. and descendants of other parties to the agreement, consented to a sale. Upon the question of distribution, *Held*, that the plaintiff is not entitled to five-sixths of the proceeds of sale under the second agreement, assuming the same to be valid, because that agreement contemplated that the last survivor of all the original six heirs should be the sole owner of the property and plaintiff is not such survivor, and also because that agreement related to the devolution of ownership so as to prevent a sale until the number of heirs

had been reduced to one and did not provide for the distribution of proceeds of a sale made before that time, and that consequently the proceeds of sale should be divided among the parties according to their rights irrespective of the agreement.

Appeal from an order of the Circuit Court for Talbot County (Stump, J.), ratifying an arbitrator's account.

The cause was argued before McSherry, C. J., Bryan, Fowler, Briscoe, Roberts, Boyd and Russum, JJ.

*Randolph Barton, Jr.* (with whom was *J. Franklin Bateman* on the brief), for the appellant.

*Charles Marshall* and *William R. Martin* for Thomas W. and Sallie E. Martin, appellees.

*Alonzo L. Miles* filed a brief for the heirs of Mrs. Susan E. Henry, deceased.

Fowler, J., delivered the opinion of the Court.

On the first of December, 1866, an agreement was made between William, Mary C., Eliza, John, George R., and Sallie E. Goldsborough, who were then the only heirs of the late Robert H. Goldsborough of Talbot County, Maryland. All the parties just mentioned were children of Robert H., except Sallie E., who is his niece. The only part of this agreement with which we are now concerned is contained in the last paragraph.

" *Lastly.*—It is hereby stipulated, agreed and understood, and the parties hereto expressly stipulate and agree that the old homestead and family mansion, " Myrtle Grove," shall be kept up and maintained as a joint and common home for all the said parties hereto, at all times in the future as in the past, and all parties hereto are entitled at all times to the privileges and enjoyments of said home at "Myrtle Grove ;" and furthermore, it is expressly stipulated, agreed and understood by all the parties hereto that none of said parties shall have any exclusive or separate right of property in

" Myrtle Grove," except as a homestead, during the natural life of any one of the said parties ; this being understood to mean that no one shall call for a division of the farm called " Myrtle Grove," as hereinafter laid down, so long as it may be occupied or desired to be occupied as a home by any one of the parties to this agreement ; and it is also further stipulated and agreed that said homestead and home aforesaid, at " Myrtle Grove," shall embrace and comprise the following lands and premises," which are described by metes and bounds.    It is further stipulated that " Myrtle Grove," the family homestead as thus described, " shall be and remain the common property, as tenants in common, and not as joint tenants," of said contracting parties " and subject to their future ownership and control, after the decease of all and every party hereto, as before recited, and not before."

For a number of years the family homestead was used for the purpose to which it was dedicated by the foregoing agreement.    But in the year 1883 another agreement was made which upon its face shows that it was supplemental or in addition to that part of the former agreement which we have quoted.    It was signed by all who joined in the first agreement, except Sallie E. Goldsborough (now Mrs. Martin), and provides as follows :  " It is further understood between us, the heirs of the " Myrtle Grove " homestead, that it is our desire that each individual share of the old homestead after the death of any of the brothers and sisters, shall become the property of the surviving brothers and sisters, and so on, until the last heir, who as owner of the whole, shall dispose of the old homestead as he or she may desire."    With the exception of the attestation clause this is the whole agreement.    It was executed on the third of July, 1883.  The only surviving heirs are George R. Goldsborough, the plaintiff, Mrs. Martin, formerly Sallie E. Goldsborough, and the two children and four grand-children of William Goldsborough.    The plaintiff alleges in his bill that he and Mrs. Martin are the only surviving parties to the agreement of 1866, and that neither of them has for a long

time resided at Myrtle Grove; that it cannot be divided without loss or injury to the parties interested, and that a sale thereof ought to be made and the proceeds divided between him and Mrs. Martin, according to their respective rights, he claiming five-sixths under the agreement of July, 1883, and conceding to her one-sixth, under the agreement of 1866—thus ignoring altogether the rights of the other parties defendant—namely, the children and grand-children of his brother William.   The defendants have all consented to a sale, but they deny that the plaintiff is entitled to five-sixths of the proceeds of sale, and contend that they must be divided between the parties as though the contract or paper of July 3rd, 1883, had not been executed, that is to say, one-third to the plaintiff, one-third to Mrs. Martin and the remaining third to be divided among the children and grand-children of William.

It is evident that the distribution sought by the plaintiff would be contrary to the agreements, as well as to every rule recognized by the statute.   For if the agreement of 1883 is to control, it is apparent that his contention must fail, because whatever else was intended by the parties who signed that agreement it is clear that according to their language used therein it was their desire that each individual share of the old homestead after the death of any of them should become the property of the survivors and so on, until the *last heir,* who as owner *of the whole,* should dispose of *the old homestead* as he or she may desire.   And the same conclusion must follow if the agreement of 1866 is to be effective, for it is equally clear that under its provisions Myrtle Grove was to be the common property of all, without the power, however, of any one or more to demand a sale or partition without the consent of the others, so long as Myrtle Grove should be occupied as a home by any of the parties to the agreement.   And there is also a special reservation by which the parties declare in words not to be misunderstood that the homestead shall remain the common property, as tenants in common, of all, subject,

of course, to its use as provided in the agreement.  How
the plaintiff can, under this agreement, claim five-sixths of
the proceeds of sale, as he does under his exceptions to
auditor's 2nd account, it is difficult to see.  And so it is also
equally difficult to maintain the proposition involved in his
exception, if the contract of 1883 is to govern, for by this
contract it is certain, whatever else may be uncertain about
it, that the expressed desire and therefore the intention of
the contracting parties is that the last surviving heir should
become the sole owner of the old homestead, with power
to dispose of the same as he or she might desire.   There-
fore, even if we were disposed to give the contract of 1883
full force, the plaintiff's contention gets no more support
from it than from the contract of 1866.   But the simple
answer to the whole contention of the plaintiff is without
stopping to discuss the nature of the paper executed in
July, 1883, and whether it be a contract or will " to allow
it to be made to confer upon a person who is not the last
heir, a right that was intended to be conferred by the
signers of that paper upon one who should prove to be the
last heir, would be to defeat entirely the object and purpose
of those who signed it."   In addition to this it seems to us
that another suggestion made by the defendants is conclusive.
Assuming the contract of 1883 to be valid, it is clear that it has
relation only to Myrtle Grove, as a homestead, and it never
contemplated a distribution of the proceeds of sale among the
parties interested.   Its object was to prevent a sale except
by the last heir—and he or she was to be the absolute owner of
the whole, and therefore the owner also of the proceeds of
sale.   But all the parties having any interest in the home-
stead have agreed to sell it, and it has been sold.   The
subject-matter of the agreement, the family home, no longer
exists, and there is no reason founded either upon the
intention of the parties or the principles of equity and fair-
ness which require us to apply to the proceeds of sale,
agreements which were doubtless inspired by a love of the

418        HUGHES *vs.* DROVERS' BANK.

Syllabus.                                    [86

old family home and a desire to make it the home of "the last heir."

The distribution of the fund will, therefore, be made as though the contract or paper of July 3rd, 1883, had never been executed, and the order appealed from, having finally ratified the auditor's second account, which made a distribution according to the views here expressed, will be affirmed.

*Order affirmed with costs.*

(Decided December 1st, 1897).